UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| BLUE CROSS AND BLUE SHIELD OF ALABAMA, a nonprofit, nonstock corporation, | ) ) ) | |
| Plaintiff, | ) | CV 96-L-0925-NE |
| vs. | ) | |
| DOYLE G. SANDERS, TINA M. SANDERS, | ) ) | |
| Defendants. | ) | |

FILED
97 JAN 28 PH 12:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
JAN 28 1997

## MEMORANDUM OPINION

This cause comes before the court on the cross-motions for summary judgment that both parties have filed. It is clear to this court that Alabama's law of subrogation is preempted by the Employee Retirement Income and Security Act of 1974 ("ERISA"). Thus this court today orders that the motion of plaintiff for summary judgment will be granted, and defendants' motion for summary judgment will be overruled.

**I.   Facts**

Defendant Doyle G. Sanders was a participant in a health benefits plan through his employer Nichols Research Corporation ("NRC"). The NRC plan was administered by plaintiff Blue Cross and Blue Shield of Alabama ("BCBS"), but the plan was a self-insured plan. NRC paid the cost of all claims deemed by BCBS to be

13

medically necessary.

Doyle G. Sanders' spouse Tina M. Sanders was also a plan participant. On March 22, 1991, defendant Tina M. Sanders was injured in an automobile accident involving a vehicle owned by Shelby Contracting Company and driven by Robert Lewis Harris. Pursuant to its obligations under the plan, plaintiff BCBS caused the plan to pay resulting medical expenses totaling $12,678.69.

On November 21, 1991, defendants filed suit against Shelby Contracting Company and Robert Lewis Harris. They alleged negligence, wantonness, emotional distress, and loss of consortium. On March 3, 1992, the Circuit Court of Limestone County, Alabama entered a default judgment in favor of defendants for $250,000. On October 23, 1992, Shelby Contracting Company and AETNA Casualty and Surety satisfied the judgment by payment to defendants of $200,000.

Defendants never notified plaintiff of the pending suit or settlement. Plaintiff's $12,678.69 claim for reimbursement and subrogation has not been satisfied. On April 12, 1996, plaintiff filed suit in this court against defendants.

## II. Legal analysis

In reviewing a motion for summary judgment, the motion is granted if there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in the State of Alabama, 941 F.2d 1428, 1437 (11th Cir. 1991). The evidence of the non-movant is to be believed, and the court is not to engage in jury functions such

as determining credibility and weighing the evidence. <u>Four Parcels</u>, 941 F.2d at 1437. Thus, because there is no genuine issue as to any material fact, the only question left to be resolved is whether the NRC plan's subrogation provisions shall be applied instead of Alabama's law of subrogation. The court holds today that Alabama's law of subrogation is preempted by ERISA, and thus that the NRC plan's subrogation provisions shall apply.

### A. The NRC Plan's Subrogation Provisions

The NRC health benefits plan at issue states the following on the issue of subrogation:

> If the Claims Administrator pays or provides any benefits for a Member under this Plan, it is <u>subrogated</u> to all rights of recovery which that Member has in contract, tort, or otherwise against any person or organization for the amount of benefits paid or provided. That means that the Claims Administrator may use the Member's right to recover money from that other person or organization.
>
> Separate from and in addition to the Claims Administrator's right of subrogation, if an Employee or a member of his family recovers money from the other person or organization for any injury or condition for which benefits were provided by the Claims Administrator, the Member agrees to <u>reimburse</u> the Claims Administrator from the recovered money that amount of benefits the Claims Administrator has paid or provided. That means that the Member will pay the Claims Administrator the amount of money recovered by him through judgment or settlement from the third person or organization up to the amount of the benefits paid or provided by the Claims Administrator. The right to reimbursement of the Claims Administrator comes first even if a Member is not paid for all of his claim for damages against the other person or organization or if the payment he receives is for, or is described as for, his damages (such as personal injuries) for other than health care expenses or if the Member recovering the money is a minor.

> . . .
>
> The Member or his attorney will notify the Claims Administrator before filing any suit or settling any claim so as to enable it to participate in the suit or settlement to protect and enforce its rights under this Section. If the Member does notify the Claims Administrator so that it is able to and does recover the amount of its benefit payments for him, the Claims Administrator will share proportionately with the Member in any attorneys' fees charged him by his attorney for obtaining the recovery. If the Member does not give the Claims Administrator such notice, the Claims Administrator's reimbursement or subrogation recovery under this Section will not be decreased by any attorneys' fee for the Member's attorney.

NRC Health Benefits Plan 1987 Section XI page 38 (emphasis in original).

Under the provisions of this plan, once the plan pays benefits for a member, the plan is subrogated to all rights of recovery which that member has. If the member recovers money for his injury the member will reimburse the plan. Further, if the member or his attorney fails to notify the plan before filing suit or settling any claim, the plan's recovery will not be decreased by any attorney's fees. If the member notifies the plan, the plan's recovery is reduced by any attorney's fees.

### B. Alabama's Law of Subrogation

The NRC health benefits plan contains provisions different from Alabama's law of subrogation. Two principles of equity underlie subrogation law in Alabama. <u>Powell v. Blue Cross and Blue Shield of Alabama</u>, 581 So. 2d 772, 774 (Ala. 1990).

4

First, the insured should not obtain double recovery for a single injury. Powell, 581 So. 2d at 774. Second, the insurer should be reimbursed for payments it made that are more properly borne by the wrongdoer. Id.

In applying these principles, the Supreme Court of Alabama has held that the right of subrogation exists only after the insured has been made whole. CNA Insurance Companies v. Johnson Galleries of Opelika, Inc., 639 So. 2d 1355, 1357 (Ala. 1994); Powell, 581 So. 2d at 776. This rule applies even if the contract under which subrogation occurs provides otherwise. Powell, 581 So. 2d at 777. The insurer has the burden of proving that the insured has been fully compensated. Complete Health, Inc. v. White, 638 So. 2d 784, 787 (Ala. 1994). The Alabama common law of subrogation has been supplemented by the Alabama Rules of Civil Procedure.[1]

---

[1]Alabama Rule of Civil Procedure 17(a) provides the following on the issue of subrogation:

> Every action shall be prosecuted in the name of the real party in interest. ...
>
> In subrogation cases, regardless of whether subrogation has occurred by operation of law, assignment, loan receipt, or otherwise, if the subrogor no longer has a pecuniary interest in the claim, the action shall be brought in the name of the subrogee. If the subrogor still has a pecuniary interest in the claim, the action shall be brought in the names of the subrogor and the subrogee.

Ala. R. Civ. P. 17(a) (1996).

5

C.  **Preemption of Alabama's Law of Subrogation**

1.  The Preemption Provision

The Supreme Court has set out a clear method to determine whether a provision of a state's subrogation law has been preempted by ERISA. See FMC Corporation v. Holliday, 498 U.S. 52 (1990); Blue Cross and Blue Shield of Alabama v. Lewis, 754 F. Supp. 849 (N.D. Ala. 1991). First, the Court has noted that ERISA preempts all state laws that "may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a); Holliday, 498 U.S. at 57. A state law relates to an employee benefit plan when it has a connection with or a reference to such a plan. Holliday, 498 U.S. at 59. Alabama's law of subrogation seems to make no reference to an employee benefit plan.

However, Alabama's law of subrogation does have a connection with such a plan. In Holliday, the Supreme Court noted that it regularly applies ERISA's preemption clause to state laws that risk subjecting plan administrators to conflicting state regulations. Id. at 59. "To require plan providers to design their programs in an environment of differing state regulations would complicate the administration of nationwide plans, producing inefficiencies that employers might offset with decreased benefits." Id. at 60. Under Alabama law, subrogation cannot occur until the beneficiary has been made whole. This requirement would, if applied to employee benefit plans, force the plans to pay benefits in excess of what plan administrators intended to provide.

6

Plan administrators would be forced to determine--and, in some cases, to litigate--whether the beneficiary has been made whole. If the beneficiary had not been made whole, the right of subrogation provided in the plan could not be utilized by the plan. Thus a nationwide plan might fail to recover monies in Alabama that it could recover in states with different subrogation laws. Because of these different results and the accompanying bureaucratic inefficiencies, the plan might well choose to decrease benefits in Alabama. This is the exact result which ERISA's preemption provision tries to prevent. See id. Thus Alabama's law of subrogation has a connection with employee benefit plans, and it is preempted by ERISA.

### 2. The Saving Clause

The second step in the Supreme Court's preemption analysis is to determine whether the saving clause applies. Id. at 60-61. The saving clause provides that, except as provided in the deemer clause, "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance." 29 U.S.C. § 1144(b)(2)(A). In Blue Cross and Blue Shield of Alabama v. Nielsen, 917 F. Supp. 1532, 1538 (N.D. Ala. 1996), this court noted that there is a two-step analysis in determining whether the saving clause applies. First, the court must determine under a common-sense view whether the state law regulates insurance. Pilot Life Insurance Company v. Dedeaux, 481 U.S. 41, 48 (1987); Nielsen, 917 F. Supp. at 1538.

Second, the state law must also regulate the "business of insurance" as that term is defined under the McCarran-Ferguson Act. <u>Pilot Life</u>, 481 U.S. at 48; <u>Nielsen</u>, 917 F. Supp. at 1538. A state law must satisfy both steps in the analysis to be saved from preemption. <u>Nielsen</u>, 917 F. Supp. at 1538.

Alabama's law of subrogation does not meet the common-sense view of the term "regulates insurance." "A common-sense view of the word 'regulates' would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry." <u>Pilot Life</u>, 481 U.S. at 50. Thus a law only meets the common-sense view if it is specifically directed toward the insurance industry. <u>Id.</u> The concept of subrogation is not specifically directed toward the insurance industry. Indeed, subrogation law affects not just the insurance industry but also "covers any and every conceivable person or entity that might be responsible for paying health benefits, including ERISA plans." <u>Nielsen</u>, 917 F. Supp. at 1538-39. Because Alabama's law of subrogation fails the common-sense test, the saving clause does not apply to it.

However, even if the common-sense test were met, Alabama's law of subrogation does not regulate the "business of insurance" as that term is defined under the McCarran-Ferguson Act. Three requirements must be fulfilled for a law to regulate the business of insurance under McCarran-Ferguson. <u>Pilot Life</u>, 481 U.S. at 48. First, the law must have the effect of transferring or

8

spreading a policyholder's risk. <u>Id.</u> Second, the law must be an integral part of the policy relationship between the insurer and the insured. <u>Id.</u> at 48-49. Finally, the law must apply only to entities within the insurance industry. <u>Id.</u> at 49.

   First, Alabama's law of subrogation seems to have the effect of transferring or spreading a policyholder's risk. <u>See</u> <u>id.</u> at 48. "The risk-spreading principle concerns the nature of the coverage of the policy--in other words, the risks of injury that the insurance company will bear for the insured." <u>Smith v. Jefferson Pilot Life Insurance Company</u>, 14 F.3d 562, 569 (11th Cir. 1994), <u>cert. denied</u>, 115 S. Ct. 57 (1994). Alabama's law of subrogation includes the rule that the right of subrogation exists only after the insured has been made whole. <u>CNA</u>, 639 So. 2d at 1357. Under this rule, the insurer must bear the risk until the insured has been made whole. This rule is transferring the risk to the insurer until the insured has been made whole. Thus Alabama's law of subrogation meets the first requirement of the McCarran-Ferguson "business of insurance" test.

   Second, Alabama's law of subrogation seems to affect the relationship between the insurer and the insured. <u>See</u> <u>Pilot Life</u>, 481 U.S. at 48-49. A law affects the relationship between the insurer and the insured when it regulates the substantive terms of the policy, not just the means of administration of the policy. <u>Jefferson Pilot</u>, 14 F.3d at 570. The requirement that the insurer bear the risk until the insured has been made whole affects the substantive terms of policies. Indeed, this requirement applies

9

even if the terms of the contract between insurer and insured are different. Powell, 581 So. 2d at 777. This requirement therefore affects the relationship between the insurer and the insured. Thus Alabama's law of subrogation meets the second requirement of the McCarran-Ferguson "business of insurance" test.

Finally, Alabama's law of subrogation does not solely apply to entities within the insurance industry. See Pilot Life, 481 U.S. at 49. In addition to insured plans, Alabama's law of subrogation also was intended to apply to all entities that pay health benefits, even to entities that maintain self-insured plans. Thus the third prong of the McCarran-Ferguson "business of insurance test" is not met. As with the common-sense test, Alabama's law of subrogation cannot be said to regulate insurance. Thus the saving clause does not prevent ERISA from preempting Alabama's law of subrogation.

### 3. The Deemer Clause

Even if the saving clause applied, the deemer clause would not save Alabama's law of subrogation from preemption by ERISA. The deemer clause provides that no employee benefit plan "shall be deemed to be an insurance company ... for purposes of any law of any State purporting to regulate insurance companies." 29 U.S.C. § 1144(b)(2)(B). The Supreme Court interprets the deemer clause as exempting self-funded ERISA plans from state laws that regulate insurance. Holliday, 498 U.S. at 61. The plan at issue was a self-funded ERISA plan which is exempt from state laws which

regulate insurance. Thus the plan at issue is exempted from Alabama's law of subrogation.

## III. Conclusion

The NRC plan at issue is not subject to Alabama's law of subrogation. Thus the subrogation provisions in the plan are due to be enforced. Under the plan's provisions on subrogation, the plan is entitled to recover the $12,678.69 that it has paid for Tina M. Sanders' injuries.

Under the terms of the plan, BCBS need not reduce this amount by any attorney's fees. The plan provides that because defendants failed to notify the plan before filing suit or settling any claim, the plan's recovery is not decreased by any attorney's fees.

It is clear to this court that Alabama's law of subrogation is preempted by ERISA. Thus by separate order, this court today grants the motion of plaintiff for summary judgment and overrules defendants' motion for summary judgment.

DONE this 28th day of January 1997.

_____
SENIOR JUDGE